Next case this morning is 21-8050 Crow Tribe of Indians v. Repsis. Counsel for Appellant, please make your appearance and proceed. Thank you, Your Honor. My name is Dan Leverence. I represent the Crow Tribe of Indians and I intend to reserve two minutes for rebuttal. There are two questions before this court today. First, whether the district court erred when it said that it lacked the authority to decide the Tribe's Rule 60 motion. And second, whether that motion should be granted. I'm going to start with the second question, Your Honors. And the sole reason that we're here today is because the state, even after the Supreme Court's Herrera decision, even after the issue preclusion question was decided in state courts, continues to defend the vitality of this court's 1995 decision in Repsis. Repsis is not consistent with the Supreme Court's decision. The circumstances have changed significantly and relief should be granted. I'll start with the Bighorn National Forest. Relief should be granted under Rule 60b-6, which provides that the court may grant relief for any reason that justifies relief. And the Herrera decision clearly justifies relief. This court in Repsis found that the creation of the Bighorn National Forest meant that Crow Tribe Indians could not hunt there. The Supreme Court in Herrera decided exactly the opposite, that creation of the forest did not preclude the Why isn't there? I mean, they didn't categorically decide the opposite because they allowed for the possibility that there would be certain portions of the Bighorn that would be occupied. They did. But those would require some proof by the state that the specific location is occupied. Exactly. And this applies to this question and it also applies to the 60b-5 on the question of whether we should decide this. I mean, both of those seem to imply that there's fact-finding and the kind of trial court stuff that quintessentially that court should do if we were to get to that point. I mean, so I'm struggling to understand how we would be well-situated to decide the 60b-5 motion ourselves. The Supreme Court at Standard Oil did say that district courts are better suited to that. That's one reason that the district court should have decided this question. This court can still decide it because we're not asking for a ruling that there is no site-specific occupation. We're simply asking that this court's decision that there is categorical occupation either be vacated because it is wholly inconsistent with the Supreme Court's decision or that it be modified to come in line with the Supreme Court's decision. There's no fact-finding that's required for that because it simply requires a comparison of the two decisions. They can't exist in the same universe. This court said categorical occupation. The Supreme Court said no categorical occupation. And the Supreme Court's decision has to prevail in that. The state's only argument now that the state court proceeded... Well, if this comes up again, won't the Supreme Court decision prevail? And then you have, we are then probably in district court where fact-finding can occur. Both on the occupied issue and also the conservation issue. If the state chooses to prosecute another Crow tribe member, it can try to prove site-specific occupation at this point. This court granting relief now wouldn't change that. And the state can try and prove conservation necessity at that point. That's what the Supreme Court said in Herrera in its remand order. It said the state can try to prove those things. But the state is trying to use the Rep's judgment to say that it doesn't need to prove those things. That's why we need relief. That's why the district court said that the state court proceedings can't give us adequate relief. And apart from seeking to rely on the state court proceedings, the state's only other argument on the Bighorn National Forest was that a U.S. Supreme Court decision changing the law is not by itself sufficient grounds for relief from judgment. But all the cases they cite are condemnation of land with judgments that would need to somehow be unwound. There's nothing to unwind here. This court issued a legal rule. The Supreme Court has issued a contrary legal rule. And this court should bring its decision in line with the Supreme Court's. But again, but again, go ahead. Is the state, you mentioned that the state is trying to use Rep's too. I haven't really seen that. How are they trying to use it? They're done in state court. They've lost that issue. They've lost that issue with respect to the prosecution of Clayton Herrera. I can't guarantee that they're not going to try and use Rep's in some subsequent prosecution of a tribal member. Okay, so that was a misstatement then. You made it sound as though they were actively trying to use Rep's too. There's no evidence that they are at this point. No, not after the state's court's decisions have concluded that prosecution, no. You're anticipating that they would try to use Rep's too in the sense that... The very fact that they continue to oppose Rule 60 relief suggests that they must see there's some value that they can milk out of the Rep's too decision. For example, and I think this is more easily illustrated in conservation necessity, they might argue that because this court once found conservation necessity, the burden has shifted to the treaty hunter to prove that the conservation necessity law works, but if they've got this Rep's decision they can point back to and they have a judgment that they see as a judgment in their favor on that question, that it still chills the treaty hunting rights of pro-tribe members. On the conservation necessity issue, let's assume for the moment, I'll come back to it perhaps later, but let's assume you're right on the 60 v. 6 question of whether this is a matter that we perhaps intervene on. Well, on the conservation necessity though, the essence of trying to get that judgment set aside, would it not be changing circumstances? And we're not situated to evaluate changing circumstances. There's been no fact finding on changing circumstances. So how in the world could we do that particular issue? There are both changes in law and changes in facts that are judicially noticeable that the state has not disputed in these motion proceedings. In fact, they rely entirely on statistics produced by the state itself that demonstrate why this court should make the change. Well, I guess I understood your argument to be that you thought we could, but the better approach would be to remand to the district court on the conservation issue. I think that the district court should have decided in the first instance. I think in the interest of efficiency and judicial economy, now that the question is here at the 10th Circuit, simply to decide it. That's what this court did in the Gokul versus Oklahoma City case, the Oklahoma City University case that we cited in our brief. Well, if we disagree with you that this is a fact issue, couldn't we remand to the district court and say, you know, 20 years later, circumstances have changed. Talk about those, get it figured out, have an evidentiary hearing. And it's not so much that there would need to be an evidentiary hearing on whether a it's just that the tribe needs to demonstrate that circumstances have changed efficiently enough that the prior judgment is no longer equitable moving forward, right? The Supreme Court in United States versus Swift way back in 1942 said that this type of motion is not about relitigating the circumstances of the original litigation. It's about seeking relief from the effect of the litigation moving forward. The effect of the litigation moving forward is that this court has said something with respect to conservation necessity. That something was said 25 years ago when the entire state regulatory framework was different, when the elk populations were merely at management levels. Now they're wildly exceed those levels and the state is taking extraordinary measures to reduce elk populations while also prosecuting pro-tribal members for violating this conservation necessity. You also argue that you think that our statement about conservation necessity in Repsos 2 was dicta. I believe it was, Your Honor. I don't think this court, the Supreme Court set out three elements of conservation necessity. One of those is that the regulation itself is reasonable and necessary for conservation, which speaks to the type of element it has. This court's sentence fragment there spoke only to that element, spoke only to conservation, you know, reasonable and necessary for conservation. It did not say anything about whether the regulations were being applied in a non-discriminatory manner. Off the top of my head I'm forgetting the third element, but there were three elements and the court only addressed one of them. Does that make it dicta though? I mean, it may say that it wasn't a well-written sentence, it wasn't a well-written paragraph, it wasn't best analysis, but does that make it dicta? I think it means it falls short of a holding. Do you have any authority for that? I don't, Your Honor, but I think that if a court had said that one, that a party had proved one element of a claim, that that would fall short of a judgment that that claim was proven. And that's basically what the court... I mean, it's not a claim, it's a defense. Conservation necessity is a defense to an established treaty right. But if someone had an affirmative defense, but if someone has proven only one element of their affirmative defense, they haven't proven their affirmative defense. Well, if it's dicta, then what would stop you from initiating a separate action, a declaratory judgment action to show that there is no conservation necessity needed? We could do that, but we felt it was more efficient, Your Honor, to revisit this original decision. And it also... The state's whole argument about deferring to the state court proceedings was essentially an abstention argument. They were claiming in the district court that we were interfering with the state court proceeding. And if we initiated a new deck action, we might be. But the state court proceeding was about the issue preclusive effect of this court's decision, this court and the district courts. And so we thought it was a first instance for the federal courts to resolve the continuing validity of their own judgment. Okay. Well, you're talking historically, and I mean, that seems like a reasonable, not necessarily the only way you could proceed, but a reasonable way to proceed. But we're here now, and you're asking us to make a 60B determination. Why can't you just do it now? I mean, the state court proceeding has run its course, right? We could file a new deck action now, but that's not a reason to deny Rule 60 relief. Rule 60 relief is appropriate here because applying the perspective or the judgment prospectively would no longer be equitable. I do want to briefly address the reasons that the district court was wrong about its authority on the Rule 60 question. There's two reasons that the district court erred. First, they drew an artificial distinction about this court's decision being on did not address. There's no basis for that distinction in Rule 60 itself or in the jurisprudence. And in fact, other circuit courts have found that a district court even has authority to grant Rule 60 relief when the circuit court has reversed the district court. Second, they erred in relying on the Lappizak case, which not only predates standard oil, but was an appellate leave rule case. Standard oil got rid of the appellate leave rule. And in doing so, standard oil pointed out that some circuits, including the 10th Circuit, never followed the appellate leave rule. So Lappizak should not have been influential in this case at all. Now, the state court argument here or the state's argument here is that Rule 60 relief would have violated the mandate rule. But the district court did not invoke the mandate rule. And the mandate rule is not in play. The Supreme Court is standard oil. Well, it didn't use the magic words. But isn't that part of its thinking that's obvious from its ruling is, OK, I'm the district court. They're the circuit. Usually, I don't try to overrule circuit rulings. Well, it was expressed about that. It's sort of a district court thing. Where we asked the district court to find that this court had not made a complete conservation necessity holding, the district court actually was clear about saying that that would violate. They didn't say mandate rule, but they said it would violate the mandate. They said nothing about the mandate in their Rule 60 analysis. And in standard oil, the Supreme Court said that the reason that district courts can grant Rule 60 relief when it's a proper Rule 60 motion alleging facts and law that have changed since the original record and since the original mandate, that the mandate's not implicated by that Rule 60 motion. The state does not dispute that everything we argue has come after this court's decision in 1995. And so this is a proper Rule 60 motion that does not implicate the mandate. Even if the mandate is implicated, just as this court did in the Ute case, it should modify or vacate its judgment to bring it in line with Supreme Court decisions. So could you just continuously bring Rule 60 motions on this conservation issue? Because it changes, obviously, from day to day and year to year. And, you know, what you're suggesting is that this is just going to go on ad infinitum? The case law on conservation necessity suggests that that's the way it works. A conservation necessity finding is good for a specific regulation of a specific species in a specific place at a specific time. And if you look at the Oregon case that we cited to you, they made a conservation necessity finding initially. Five years later, the tribe sought relief. And they said there's still a proven conservation necessity. And one year later, the tribe sought relief. And they said, species recovery, that conservation necessity no longer exists. And we're granting relief. And was that through a Rule 60 motion, though? I don't think it was. The court's ongoing monitoring of that case is not a Rule 60 procedure. My time's expired. And so if you have no more questions, I'll... Thank you. Thank you. May it please the court. Counsel, my name is James Castee. I'm a Deputy Attorney General with the Wyoming Attorney General's Office. The Crow tribe seeks relief from the prior judgment in this case on the grounds that it is no longer equitable to apply it prospectively. The courts of Wyoming have determined that they will not apply it prospectively. Accordingly, there is no inequity for the court to remedy here. To be sure, and completely candid, the state of Wyoming did attempt to apply the judgment prospectively in Herrera on the reliance, or in reliance, on the reasoning of the dissent in that case. But the state lost. And the state accepts that ruling. Now that the state court proceedings have concluded, the rights of the parties are clear. Crow tribal members do not have to follow state hunting regulations in the Bighorn National Forest except in specifically occupied areas, or unless the regulations at that time are reasonable and necessary for conservation. Well, you should have a settlement agreement, shouldn't you? Wouldn't that be just the perfect thing right now? It would. Worded just like you've spoken it. It would. And yet, motions can be withdrawn. Motions can be conceded. Settlements can be had. But treaty hunting issues are very delicate and controversial. And we haven't been able to get there yet. That's not to say that we won't. But for today, we're here on this motion. And it's still pending. And unlike a cause of action, this can't really become moot unless the parties decide to make it go away. Well, sort of implicit in Judge Briscoe's question, though, is absent a settlement agreement, one could not fault your adversary for saying, yes, you're saying it. And you may be in good will when you're saying it. But who's going to stop the next attorney general of Wyoming from saying, by God, I'm a pound sand. I'm going to have Repsys 2 and go forward. The person who's going to stop us from doing that is either a state court in Wyoming or a federal court in Wyoming under the doctrine of issue preclusion. Herrera recently decided that Repsys 2 is not entitled to preclusive effect on the alternative holdings. In a subsequent action in which the state attempted to prosecute a treaty hunter and relied on Herrera and said it did have issue preclusive effect, the state would be bound by that very same doctrine from making such an assertion. The four elements, of course, of issue preclusions are privity. Well, the state's still a state. The same issue, issue preclusive effect of Repsys, that would be the same. Judgment on the merits, just got that from Herrera. And a full and fair opportunity to litigate, which we have. So the state is effectively foreclosed from pursuing in the future an argument that Repsys continues to bind treaty hunters and continues to dictate the outcomes of prosecutions. You know, I think the Crow tribe isn't really asking for a different substantive result than what I've outlined here that governs the rights of the treaty hunters. But it wants to go back in time and tear up a judgment that's largely become irrelevant. Well, to that point, I can understand as a practical matter the position you're putting forward. But as long as that judgment is on the books, you're not here saying their claim is moot, right? I mean, in the real world, is there relief that we can still give them? You could vacate that judgment. Would it make any difference on the ground? No. Well, no, no. Well, mootness, it means, does it have any real effect? Both prudential and Article III mootness goes to the question of whether there is any relief in the real world that we could grant. And I mean, so are you saying there isn't any? Other than tearing up the piece of paper, no. Nothing that you do here today is going to make a difference in the rights of the treaty hunters. It's just not. And we've passed that point now. Well, let me, I'm sorry to cut you off, but at some point, the argument's going to take place. Let's assume, let's go on the 60 v. 6 front. The argument is going to take place as to what is occupied and what is not unoccupied. You know, you have the categorical argument that no statehood did not, well, Bighorn did not occupy, create an unoccupied area, or I got that mixed up. But the point I'm making is simply that at some point, one's got to determine what is occupied land, right? And why wouldn't this litigation still provide a vehicle to do that? Because this litigation dealt with the forest as a whole. The questions that remain are site-specific occupations. So there could be sites within the forest that because of the nature of development on those sites, they are considered occupied. It's going to be relatively limited inside the forest, but it could exist. The forest itself, the Supreme Court has determined it is not occupied by its very creation. No, I get that. But the point I'm making is why wouldn't this litigation be a vehicle to resolve that? Hence, this not being moved. In other words, if we were to find that the district court did, erred in saying it did not have the authority to address these 60B issues, we remand district court rules on the vacating of the judgment, why wouldn't that be an occasion for there also to be a discussion about what part, what site-specific areas are occupied or not? That limited issue is not an issue in REPSIS, never was. It's just the categorical. It's only the categorical issue that was at issue in REPSIS. Correct, Your Honor. So it may be in future cases, the site where the event takes place, say there's another poaching event, that we have to look at that specific site and make a determination in future proceeding that that is or is not occupied. That will not be before the district court on remand in this case. That's going to depend on future events. We know not what. Okay, but to be clear then, I mean, you're saying it doesn't make any difference. It's relevant what happens. I just want to put a fine legal point on it. Are you telling me that this case is moot then? No, no, I don't think it can be moot. It's not really a cause of action that's become moot. A motion for relief from judgment is one litigant saying, I want this judgment torn up. I want it changed or thrown away in some way. And that often happens when we have a judgment that has injunctive relief that continues or a consent decree with continuing obligations. This is a declaratory judgment action. None of those things exist here. So if we tear that judgment up and throw it away, will it make any difference in the future? No, no, it won't. But just as an example, I want a blue ribbon once and I put it up on the wall in my house. You don't care that I want a blue ribbon, but you can't come take it from me, right? That's not how we deal with these things. We don't go back in time and tear up old judgments without good reason, unless they are causing real and substantial harms today. And this one is not. The way to deal with an old judgment that has become irrelevant because of the march of time and the progress of the law is through the application of the doctrines res judicata and issue preclusions. That's what happens. OK, well, that goes to your blue ribbon example. That goes to the question then of whether even if there is an availability, let's assume for the moment, just assuming for the moment, district court error. And then the question is whether this relief should be granted. The argument would be, well, just because the law has changed, is this an occasion where we should take some act of tearing up the judgment when it has no effect? Am I understanding you? Correct. OK. All right. Well, if that's true, why wouldn't we be in a situation where we would say district court, you erred, and counsel for the Wyoming attorney general can have that conversation with the district court below? So is your question, why shouldn't we remand this and have the judgment addressed on there? Yes, in essence, that is my question. Yes. I agree with the Crow tribe that there's not a lot of efficiency in sending this back to the district court. If you believe that the district court may have... The federal courts, some would say efficiency is not our highest value. It is a value, but it is not the highest value. So what... But I think you have all the information at hand to make a decision today. I agree with the Crow tribe. There aren't any facts at issue that matter here that would affect the determination whether or not you should grant Rule 60 relief or not. On the conservation side? On the conservation issue? Right, because I don't think any of the facts that they've raised matter. And let me tell you why. So Repsis is a case about a killing by a guy named Thomas Ten Bear. None of the facts related to Mr. Ten Bear's killing of an elk changed. None of them have changed. So ordinarily, you would say, hey, we've got to do something about this judgment because we found new evidence about Mr. Ten Bear's killing that matters, and we should fix it. That's not what happened here. We now have facts about the present day status of an elk population wholly unrelated to Mr. Ten Bear that might matter for future cases, but they don't matter here. And they're not the kind of pieces of evidence that, you know, elk populations 30 years after Mr. Ten Bear's case are somehow bigger than they used to be. Doesn't make any difference for this case. But if you accept that Repsis 2 had as a holding conservation necessity, then why wouldn't it matter? Because that holding was limited to the facts in that case. If you look at the decision in Repsis, what this court said was simply, we hold there is ample evidence in the record to support the state's contention that its regulations were reasonable and necessary for conservation. Use of the word were indicates the court's holding related to the specific facts in Repsis and was not a declaration for all time. Of course, the state courts have rejected the notion that the Repsis conservation necessity holding does continue to have future effect in future proceedings. As Mr. Lerwitz explained, conservation necessity is an event-specific inquiry. At some future point in time, just like Mr. Herrera's case, somebody's going to do something in the Big Horn National Forest and the state may decide that it believes that that was state law and we should have a fight about whether that state law was reasonable and necessary for conservation. And that inquiry will be decided on those facts and those facts alone. This case- What about on the occupation side of it? I mean, I think I get what you're saying about the conservation side of it, but on the occupation side, why can't we just do what we did in the Ute case after the Supreme Court decided and disagreed with us 10 or 20 years later or whatever it was, and we simply said, all right, we're going to modify our judgment at this point. So we're going to deal with this. We're going to take care of the inconsistency and we're just going to simply say, right, what the Supreme Court said controls. And why couldn't we just put this whole issue to bed on the categorical occupation side by doing exactly what we did in the Ute case after Hagen? Well, you absolutely can. You have that power. Why wouldn't we, I guess, is what I'm asking. Because the standard for doing that is and should be very high. There are probably hundreds, thousands, millions of judgments that this court has rendered from time immemorial that have subsequently had input, changes, reflections by the judiciary over time. And we don't go back in time and rewrite all of those to make them consistent with the law today. That's not normal, nor should it be. The standard for going back and adjusting your mandate is extremely high. I understand all that. Why isn't this very similar to what happened in Ute Hagen? Because in Ute Hagen, the conflicting judgments actually created real problems on the ground for the people who were charged with implementing them. This does not. Like I said, there's no real dispute here. Does not as long as you are consistent with what you said today and the state doesn't change his mind and decide to prosecute someone. No, I understand what you're saying, but I really think that it's going to be very difficult, not a good use of a prosecutor's time in the future to come into court and say, I know what the Supreme Court said, and I don't care. That's not going to work very well for them. And we're going to be bound by the doctrine of issue preclusion in Herrera. This question is simply solved, and it's time we can move on. And going back and adjusting your judgment with the high bar that's in place, and there are no practical problems on the ground, just doesn't make any sense. This is a very different case than the Ute Indian tribe, where prosecutors and people living under those different rules were trying to figure out what jurisdiction they were under. That was a real problem. We don't have that problem. Let me ask on this conservation necessity argument, is the implication of your comment about this being a point in time decision vis-a-vis this defendant, is the implication of that is that on the merits, they wouldn't be entitled to 65 relief anyway. In other words, whatever information they could gather now about the shifting tides of elk population has no bearing on whether the court was right in that moment in doing what it did. Exactly. Okay. Nothing about the new information makes any difference with regard to this court's holding on conservation necessity and requisites that related to a fixed event in time. Now, I see that my time is up. Because we believe that the Crow tribe is not harmed by the judgment or this court's mandate in this case, the state of Wyoming requests that the Crow tribe's request for relief from both should be denied and that the district court be affirmed. Thank you very much. I'll give you a minute. Thank you, Your Honor. And I think I'll take less than a minute. First, I want to clarify, we have not asked in Rule 60b-5 relief to change the court's original finding with regard to conservation necessity. And that's not what Rule 60 allows us to do. It allows us to change the prospective effect of it. Now, the state says there is no prospective effect because that was limited to that point in time. This is the first time they've said that. It was right up until they lost in the state Supreme Court, they were saying that Clavin Herrera could not even argue conservation necessity because he was precluded. And a week ago, they issued their second 28J letter and say they're not going to take that to the Supreme Court. And I asked, so were you going to give up on this issue? They said, nope, we're going down to Denver to argue. So here we are. And second, I remind the district court did point out that one of the reasons the state court proceedings were not sufficient to give the Crow tribe relief is that the Crow tribe have treaty hunting lands in other states. And the fact that the state may not use, may not choose to use, may not be allowed to use REPSIS again doesn't mean that someone else might point to it so long as that judgment is out there. Thank you, Your Honors. Thank you, counsel, for your fine arguments. The case is submitted.